IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES R. COOTS,

      Plaintiff,

v.

      Civil Action 1:22-cv-625
      Judge Matthew W. McFarland
      Magistrate Judge Kimberly A. Jolson

OFFICER TWILLA, et al.,

      Defendants.

### REPORT AND RECOMMENDATION AND ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order (Doc. 18) and Motion regarding evidence (Doc. 25).  For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion for Temporary Restraining Order (Doc. 18) be **DENIED**.  Plaintiff's Motion regarding evidence (Docs. 25) is **DENIED without prejudice**.  The United States Marshal is **ORDERED** to complete service on Defendants Straight and Twilla.

**I.**    **MOTION FOR TEMPORARY RESTRAINING ORDER (DOC. 18)**

Plaintiff, a prisoner at the Lebanon Correctional Institution ("LeCI"), has brought a Complaint against several individuals currently and formerly employed at LeCI, alleging that they used excessive force against him in violation of the Eighth Amendment of the Constitution.  (Docs. 6, 12).  Plaintiff has requested that he be transferred to another prison or otherwise separated from Defendants and other staff at LeCI, due to purported threats from staff and other inmates acting under the direction of staff.  (Doc. 18).  In particular, he says that Defendant Corrections Officer Chad Emmons and other staff have directly threatened him, and that two inmates have threatened him, under the alleged direction of Defendants Emmons and Lieutenant Brandon Link, whom Plaintiff says "put a hit to do [him] real harm and be paid off for it."  (*Id.*).  Plaintiff says that, in

the face of these threats, he has chosen to remain in administrative segregation, and he lacks legal materials there and is impaired in his ability to prepare his case. (*Id.*).

Previously, the Court indicated that it would construe Plaintiff's Motion as a Motion for Temporary Restraining Order. (Doc. 20 at 1–2). Defendants responded to the Motion (Doc. 21), and Plaintiff filed no reply. The motion is therefore ripe for review.

"The standard for addressing a motion for a temporary restraining order is the same as the standard applied to a motion for a preliminary injunction." *Ferron v. Search Cactus, L.L.C.*, No. 2:06-CV-327, 2007 WL 2110497, at *1 (S.D. Ohio July 13, 2007) (citation omitted). Both are extraordinary measures, and the movant must meet a high burden to show that such a measure is justified. *See ACLU v. McCreary Cty.*, 354 F.3d 438, 444 (6th Cir. 2003); *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 860 (S.D. Ohio 2008). Indeed, the proof required to obtain this relief "is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Accordingly, the movant must show more than factual issues—he "must affirmatively demonstrate [his] entitlement to injunctive relief." *Davis v. Caruso*, No. 07-11740, 2008 WL 878878, at *3 (E.D. Mich. Mar. 28, 2008).

When considering whether to grant this extraordinary relief, a district court must balance four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (citation and internal quotation marks omitted).

Under the first factor, to establish a strong likelihood of success on the merits, the movant must demonstrate "more than a mere possibility" of success. *Nken v. Holder*, 556 U.S. 418, 435

(2009). This means that the movant must "show, at a minimum, serious questions going to the merits" of his claims. *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (internal quotation marks and citation omitted). The first factor is often determinative:

> [C]ourts have often recognized that the first factor is traditionally of greater importance than the remaining three. *See Roth v. Bank of the Commonwealth,* 583 F.2d 527, 537 (6th Cir. 1978). In fact, the Sixth Circuit has held that when the proponent of the injunctive relief has no chance of success on the merits of the claim, the Court may dismiss the motion without considering the other three factors. *See Michigan State AFL–CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997). Failure to do so is reversible error. *See id.; Sandison v. Michigan High School Athletic Ass'n,* 64 F.3d 1026, 1037 (6th Cir. 1995).

*Stanley v. Ohio Dep't of Rehab. & Corr.*, No. C2–02–178, 2002 WL 31409435, at *3 (S.D. Ohio August 12, 2002) (denying motion for injunctive relief after evaluation only of chance of success on the merits factor); *see also City of Pontiac Retired Emps. Ass'n*, 751 F.3d at 430 ("When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor.").

Under the second factor, the movant "must show that irreparable harm absent injunctive relief is 'both certain and immediate, rather than speculative or theoretical.'" *Kensu v. Borgerding*, No. 16-13505, 2018 WL 6540262, at *4 (E.D. Mich. Oct. 31, 2018), *report and recommendation adopted*, No. CV 16-13505, 2018 WL 6527782 (E.D. Mich. Dec. 12, 2018) (quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (noting that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy"); *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) (noting that "[a] district court abuses its discretion when it grants a preliminary injunction without making specific findings of irreparable injury").

3

Under the third and fourth factors—harm to others and the public interest—the context of the case matters. In a prisoner civil rights case like this one, "[p]rison administrators [ ] should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 521 (1979). Consequently, "courts, especially federal courts, should be reluctant to become involved in the internal administration" of correctional institutions. *Hanna v. Toner*, 630 F.2d 442, 444 (6th Cir. 1980).

Finally, in addition to the above factors, Plaintiff's case is also subject to § 802 of the Prison Litigation Reform Act (the "PLRA"), which requires preliminary injunctive relief to "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

**A. Likelihood of Success on the Merits**

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain." *Rafferty v. Trumbull Cty., Ohio*, 915 F.3d 1087, 1093 (6th Cir. 2019) (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). "[T]he Supreme Court set forth the standard for analyzing excessive force claims under the Eighth Amendment: 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "To make out a claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component." *Rafferty*, 915 F.3d at 1094 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).

"The subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383.  Courts evaluate "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (quoting *Hudson*, 503 U.S. at 6).  In making this inquiry, the Court should consider the need for the use of force, the relationship between that need and the type and amount of the force used, the threat reasonably perceived by the official, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response.  *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

"The objective component requires the pain inflicted to be sufficiently serious." *Rafferty*, 915 F.3d at 1094 (citing *Williams*, 631 F.3d 383).  This inquiry is "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 104). "The seriousness of the injuries [is] not dispositive; as the Supreme Court has held, '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... whether or not significant injury is evident.'" *Williams*, 631 F.3d at 383 (quoting *Hudson*, 503 U.S. at 9).  But "[t]hat is not to say that every malevolent touch . . . gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9.  The Eighth Amendment does not protect against "*de minimis* uses of physical force[.]" *Rafferty*, 915 F.3d at 1094 (quoting *Hudson*, 503 U.S. at 9–10).

Plaintiff alleges that Defendants assaulted him after he was misdiagnosed by medical staff as being intoxicated.  (Doc. 6 at 3).  Plaintiff says he was not intoxicated, but instead was suffering a seizure.  (Doc. 6-1 at 2).  He says that during the assault he was struck in the eye and his right arm was pulled out of its shoulder socket, causing permanent damage to his right eye and shoulder. (Doc. 6 at 3).  Additionally, he says he suffers from post-traumatic stress disorder because of the

assault. (Doc. 6 at 3). The Undersigned assumes for the purpose of this recommendation that the pain inflicted on Plaintiff is sufficiently serious to satisfy the objective component of his excessive force claim. However, Plaintiff's likelihood of success on the subjective component of his claim is not high.

Notably, the subjective component focuses on the state of mind of the prison officials. And here, Plaintiff acknowledges that the Defendants' use of force resulted from their belief that he was intoxicated. (Doc. 6 at 3). While he also maintains that the belief was mistaken (*id.*), if it was earnestly held by the Defendants, it supports a good-faith effort to maintain or restore discipline. Indeed, a conduct report prepared by Defendant Twilla details that Defendant Straight called for her assistance because Plaintiff appeared to be "very intoxicated and was stumbling through the dayroom." (Doc. 6-1 at 11). A medical exam report also allegedly detailed that Plaintiff was acting "bizarre and disoriented" and slurring his speech. (*Id.* at 14). Straight was purportedly giving verbal directives to Plaintiff so she could place him in handcuffs, but he refused to give up one of his arms. (*Id.*). Twilla grabbed Plaintiff's right hand and tried to place it behind his back, but Plaintiff resisted and was forced to the ground by Twilla, Straight, and other officers. (*Id.*). Still not complying with directives, Defendant Emmons "delivered a short burst" of pepper spray to Plaintiff's face and the officers were then able to place his right hand in the handcuffs. (*Id.*). Plaintiff was then walked off the block and no further force was used. (*Id.*). Ultimately, Plaintiff was found guilty by the Rules Infraction Board of violating Rule 20, "Physical resistance to a direct order." (*Id.* at 12); Ohio Adm. Code 5120-9-06(C)(20).

In sum, the sequence of events—at least as gathered by the prison documents Plaintiff submitted as exhibits to his Complaint—was as follows: (1) Plaintiff appeared disoriented and intoxicated, and was therefore disruptive and potentially dangerous to himself or others on the

6

block; (2) Defendants attempted to restrain him; (3) he would not comply with directives; (4) Defendants used force to make him comply with directives; and (5) after he was successfully restrained, no further force was used. This tends to show Defendants using force "in a good-faith effort to maintain or restore discipline," rather than "maliciously and sadistically to cause harm.'" *Combs*, 315 F.3d at 556. And, in such a case where prison officials are making decisions under pressure to settle a disturbance, case law dictates that those officials must be afforded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional safety." *Id.* at 557 (quoting *Hudson*, 503 U.S. at 7).

At least at this stage of the litigation—without the aid of discovery to undermine this narrative from prison officials—Plaintiff has not shown a substantial likelihood of success on the merits of his excessive force claim and, consequently, has not met his burden to justify a temporary restraining order.

### B. Remaining Factors

Briefly, the remaining three factors cannot overcome the often-determinative force of Plaintiff's failure to demonstrate likelihood of success on the merits. Under the second factor, whether Plaintiff will suffer irreparable injury absent injunctive relief, Plaintiff "must show that irreparable harm is 'both certain and immediate, rather than speculative or theoretical.'" *Kensu*, 2018 WL 6540262, at *10 (quoting *Griepentrog*, 945 F.2d at 154). Plaintiff alleges that he has been directly threatened by staff and by other inmates at the direction of staff. (Doc. 18 at 1–2). While the nature of the threats is not detailed, Plaintiff does suggest they are connected to a plan to do him "real harm . . . ." (*Id.* at 2). Here, Plaintiff seems to have at least carried a minimum burden to "identify a particularized threat to himself[.]" *Brown v. Mahlman*, 2022 WL 17817615,

at *4 (S.D. Ohio Dec. 19, 2022) (citing *Baird v. Hodge*, 605 F. App'x 568, 570 (7th Cir. 2015) (Rovner, J., dissenting)).

Regarding the third and fourth factors, while a temporary restraining order in this case is unlikely to substantially harm others, the Undersigned "must be mindful of the cautions that apply to issuing an injunction that affects the operation of the prison system, which also shows that the public interest would not be served by issuing the injunction." *Carter v. Mich. Dep't of Corr.*, 2013 WL 5291567, at *6 (E.D. Mich. Sep. 19, 2013). In other words, "[t]he public interest in leaving the administration of federal prisons to federal prison administrators is another factor weighing against" a temporary restraining order in this case. *Winn v. Waugaman*, 2015 WL 1606151, at *5 (Apr. 8, 2015).

At base, because Plaintiff has failed to demonstrate a strong likelihood of success on the merits—the most significant factor in this analysis—and because courts must be reluctant to become involved in the administrative decisions of prisons, the Undersigned **RECOMMENDS** that Plaintiff's Motion for Temporary Restraining Order (Doc. 18) be **DENIED**. And, instead, this case will continue with the discovery process.

II. **MOTION REGARDING EVIDENCE (DOC. 25)**

Plaintiff requests that the Court order the Ohio Department of Rehabilitation and Corrections ("ODRC") to produce any photo and video evidence of the alleged excessive force incident at the center of this case. (Doc. 25). Defendants have responded to this Motion, saying that—to the extent the Motion is seeking to compel discovery—it should be denied, because Plaintiff has served no discovery requests on Defendants' counsel. (Doc. 27). The Court agrees. Motions to compel discovery responses may only be made if a party has failed to answer discovery requests submitted under the applicable Federal Rules of Civil Procedure. Fed. R. Civ. P.

37(a)(3)(B). Plaintiff must first seek discovery from Defendants themselves—by way of requests for discovery served upon their counsel. Accordingly, the Motion (Doc. 25) is **DENIED without prejudice**.

The Court has compiled *A Guide for* Pro Se *Civil Litigants*, which provides an overview of how to proceed through discovery. The Clerk is **DIRECTED** to provide a copy of the Guide to Plaintiff along with a copy of this Report and Recommendation and Order. The Guide may also be accessed at http://www.ohsd.uscourts.gov/pro-se-handbook.

### III. SERVICE

Previously, the Court ordered service by the United States Marshal on all Defendants in this action. (Doc. 8). Summonses issued to Defendants Straight and Twilla were returned unexecuted, and those summonses indicated both individuals are no longer employed at LeCI. (Doc. 17). Because Plaintiff had already taken reasonable steps to identify those Defendants, the Court ordered counsel for the State of Ohio to submit under seal their last known addresses. (Doc. 20). Counsel has done so (Doc. 24), and service may now be completed. Accordingly, it is **ORDERED** that the United States Marshal serve a copy of the complaint (Doc. 6), summons, the Order granting Plaintiff leave to proceed *in forma pauperis* (Doc. 5), the January 19, 2023 Entry and Order Adopting Report and Recommendation (Doc. 12), and this Report and Recommendation and Order upon Defendants Twilla and Straight, using their updated addresses available at Doc. 24. All costs of service shall be advanced by the United States.

### IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Motion for Temporary Restraining Order (Doc. 18) be **DENIED**. Plaintiff's Motion regarding evidence (Docs. 25) is **DENIED without prejudice**. The United States Marshal is **ORDERED** to complete service on

Defendants Straight and Twilla.

## **Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date:  May 15, 2023                                /s/ Kimberly A. Jolson
                                                   KIMBERLY A. JOLSON
                                                   UNITED STATES MAGISTRATE JUDGE