IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES COOTS,

      Plaintiff,

   v.

OFFICER TWILLA, et al.,

      Defendants.

Civil Action 1:22-cv-625
Judge Matthew W. McFarland
Magistrate Judge Kimberly A. Jolson

## REPORT AND RECOMMENDATION

Before the Court is Defendants' Motion for Summary Judgment (Doc. 70). The Undersigned **RECOMMENDS** that the Motion be **GRANTED**.

**I.**     **BACKGROUND**

Plaintiff, proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against Defendants, who are current and former correctional officers at Lebanon Correctional Institution (LeCI). Plaintiff alleges that on May 7, 2021, while he was incarcerated at LeCI, Defendants used excessive force against him in violation of the Eighth Amendment. (Doc. 6 at 3).

Defendants do not deny they used force. (Doc. 70 at 2–3). But the parties' accounts of how the incident arose differ. Defendants say that on the evening of May 7, 2021, Plaintiff "stumbl[ed] out of his cell" into the LeCI dayroom and "bump[ed] into other inmates." (Doc. 70 at 2). Plaintiff's conduct, according to Defendants, "showed clear signs of intoxication." (*Id.*). Given that, Defendant Straight "called for back-up and ordered Plaintiff to put his hands behind his back to be restrained with handcuffs." (*Id.*). Ultimately, Defendants say Plaintiff did not comply. (*Id.*).

For his part, Plaintiff denies that he used substances on May 7 and alleges that just before his interaction with Defendant Straight, he had a seizure. (Doc. 83 at 1; Doc. 6 at 3; Doc. 6-1 at 2 (stating that he has a seizure disorder)). He further denies that he disobeyed Defendant Straight's orders. (Doc. 83 at 2). Instead, Plaintiff says that he tried "to put [his] face mask in place" before being handcuffed by Defendant Straight. (*Id.*).

Either way, while Plaintiff attempted to don his face mask, another prison official identified as Officer Twilla grabbed his right arm and forced it behind his back. (Doc. 70-3, Video at 7:10:29–7:10:38). Then, while Defendant Straight and Officer Twilla pulled his arms, Plaintiff stumbled backwards and struggled to get free. (*Id.* at 7:10:39–7:10:47). Quickly, another unidentified officer arrived and tackled Plaintiff to the ground. (*Id.* at 7:10:38–7:10:51). Plaintiff says after that, he lost consciousness, (Doc. 83 at 2), although Defendants claim that Plaintiff continued to resist while he was on the ground (Doc. 70 at 2–3; Doc. 70-1 at 1, 3, 5, 8, 11, 16). Eventually, Defendants handcuffed Plaintiff, lifted him to his feet, and carried him to LeCI's medical area. (Doc. 70 at 3; Doc. 83 at 2). In total, the incident lasted a few minutes. (*See* Doc. 70-3, Video at 7:10:26–7:12:43). Even so, Plaintiff says during the altercation, Defendants tore his right shoulder "from its socket." (Doc. 6 at 3). He also claims he suffered nerve damage in that shoulder, permanent damage to his right eye, bruising to his ribs, and post-traumatic stress. (*Id.*).

Initially, Plaintiff sued Officer Twilla and Defendants Straight, Emmons, Link, and Nance. (Doc. 7 at 4 (recommending that Plaintiff may proceed against these individuals on an Eighth Amendment excessive force claim); Doc. 12 (adopting Doc. 7)). But after multiple attempts, Officer Twilla could not be served. (*See* Doc. 8 (ordering service by certified mail); Doc. 28 at 9 (ordering service by certified mail at an updated address provided by Defendants' counsel); Doc.

2

57 (ordering the United States Marshal to personally serve Officer Twilla); Doc. 60 (final unexecuted summons for Officer Twilla)). As a result, she was dismissed from this lawsuit on February 29, 2024, for failure to timely effect service. (Doc. 62 (recommending she be dismissed); Doc. 65 (adopting that recommendation, noting Plaintiff did not object, and dismissing her from this case without prejudice)).

The remaining Defendants moved for summary judgment on June 12, 2024. (Doc. 70 at 3). The matter is now ripe for review. (Docs. 70, 83, 84).

**II.     STANDARD**

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a defendant shows there is insufficient evidence to support any element of the plaintiff's claim and moves for summary judgment, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on which a reasonable jury could return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Ultimately, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

## III.  DISCUSSION

Plaintiff brings his excessive force claims against Defendants under the Eighth Amendment's cruel and unusual punishment clause. *Pelfrey v. Chambers*, 43 F.3d 1034, 1037–38 (6th Cir. 1995) ("[A]ll post-conviction excessive force claims are to be raised exclusively under the Eighth Amendment[.]"). Under this clause, "not every shove or restraint gives rise to a constitutional violation." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). Sometimes, "[t]he maintenance of prison security and discipline . . . require[s] that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). Therefore, to prove an Eighth Amendment excessive force claim, a prisoner must satisfy both an objective and a subjective component. *Cordell*, 759 F.3d at 580. The objective component "requires the pain inflicted to be sufficiently serious." *Cordell*, 759 F.3d at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)) (quotation marks omitted). The subjective component focuses on the prison official's state of mind and analyzes "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 7 (1992). For the subjective component, the Court considers factors such as (1) "the extent of injury suffered by an inmate," (2) the need for force, (3) "the relationship between that need and the amount of force used," (4) "the threat reasonably perceived by the responsible officials," and (5) "any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal quotation and quotation marks omitted).

The Court must refrain from "unreasonable *post hoc* judicial second-guessing" of prison officials' conduct. *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008). Because they "make their decisions in haste, under pressure, and frequently without the luxury of a second chance, [the

4

Court] must grant them wide-ranging deference" in the actions they take "to preserve internal order and discipline and to maintain institutional security." *Iacovone v. Wilkinson*, No. 2:03-cv-652, 2007 WL 490160, at *8 (S.D. Ohio Feb. 8, 2007) (internal quotation and quotation marks omitted), *report and recommendation adopted*, No. 2:03-cv-652, 2007 WL 756649 (S.D. Ohio Mar. 7, 2007). As such, when examining the need for force, "'the issue . . . is not whether the use of force was absolutely necessary in hindsight, but whether the use of force could plausibly have been thought necessary." *Cordell*, 759 F.3d at 581 (quoting *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010)).

Although Plaintiff does not discuss each Defendant's conduct in detail, (*see* Doc. 83 at 1–2), he generally asserts that his Eighth Amendment rights were violated three times on May 7. First, Plaintiff contends that the initial use of force was too much because he complied with Defendant Straight's handcuffing order. (Doc. 83 at 2 ("Officer Straight states she was trying to handcuff me and I was trying to put my face mask in place . . . . There was no reason [for force].")). Second, he says that Defendants tackled him for "no reason." (*Id.*). Third, he claims Defendants used excessive force when they "dragged" him with "[hand]cuffs on" while he was unconscious. (*Id.*). In response, Defendants argue that Plaintiff cannot satisfy the subjective component of his Eighth Amendment claims because they "used a reasonable amount of force" in response to his failure to obey orders. (Doc. 70 at 6). The Court addresses each part of the incident separately.

    **A.    Initial Use of Force**

To support their view of how the altercation began, the parties largely rely on video footage. (*See generally* Docs. 70, 84 (citing only video footage and unsworn use-of-force reports); Doc. 83 (mentioning the video only)). Importantly, none of the footage includes audio. Nor does it capture Plaintiff's conduct earlier that evening. (Doc. 84 at 2 (acknowledging the video does

"not show the build-up to Defendants instigating physical contact with Plaintiff)). For example, the video does not show Plaintiff bumping into other inmates, stumbling, or appearing intoxicated, as Defendants claim. (*See* Doc. 70 at 2). Similarly, it does not show Defendant Straight's initial order for Plaintiff to put his hands behind his back. (*Id.*).

Instead, the video starts with Plaintiff speaking to Defendant Straight and attempting to put on a face mask. (*See* Doc. 70-3, Video at 7:10:29). His left wrist is already handcuffed. (*Id.*). Both Plaintiff and Defendant Straight appear calm, and Defendant Straight holds Plaintiff's left arm while he works on the face mask. (*Id.* at 7:10-27–7:10:33). Notably, all the prisoners and officers in the dayroom also are wearing face masks. (*See generally* 7:10:29 (showing the dayroom and its occupants)). Given this footage, Plaintiff's suggestion that he delayed being handcuffed just long enough to secure his mask has some support. (Doc. 83 at 2).

Simultaneously, another camera angle shows Officer Twilla running toward Plaintiff. (*See* Doc. 70-3, Video at 7:10-27–7:10:33 (showing the dayroom and Officer Twilla on the right side of the frame)). Once she reaches him, she seizes his right arm and forces it behind his back. (*Id.* at 7:10:33–7:10:38). Considering Plaintiff was partially handcuffed and putting on a mask with his free hand, a reasonable factfinder could conclude Officer Twilla's immediate use-of-force was aggressive. *See, e.g.*, *Williams*, 631 F.3d at 384 (stating the use-of-force was plausibly unnecessary where prison officials used a chemical agent on a prisoner after he delayed obeying an order to "pack up" by asking, "What for, sir?"); *Cordell*, 759 F.3d at 581–82 (finding the force used disproportionate where the prisoner turned toward a deputy, who, in response, "rammed [the prisoner] 'head first into the wall'"). Critically, Officer Twilla is no longer a defendant in this action. As a result, her conduct is not before the Court.

As for Defendant Straight, the video shows her passively holding Plaintiff's left arm during this portion of the incident. (Doc. 70-3, Video at 7:10:33–7:10:38). Based on that, no rational trier of fact could conclude that Defendant Straight used any force, let alone excessive force, against Plaintiff at this point. As such, summary judgment is appropriate for this part of the parties' altercation.

**B.     Takedown**

Next, Plaintiff alleges that Defendants slammed him to the floor for "no reason." (Doc. 83 at 2). Defendants respond that Plaintiff's "own resistance resulted in himself and the corrections officer falling to the ground." (Doc. 84 at 3). Because the takedown is captured on camera, the Court need not take either side's version as true.

In the footage, after Officer Twilla first grabs Plaintiff's arm, she and Defendant Straight grapple with him for several seconds as he steps backwards, attempts to pull away, and refuses to be handcuffed. (Doc. 70-3, Video at 7:10:39–7:10:47). During the struggle, an unidentified officer helps Officer Twilla and Defendant Straight take Plaintiff to the ground. (*Id.* at 7:10:48–7:10:50).

Although the takedown could be seen as intentional rather than accidental, Plaintiff still cannot satisfy the subjective component of his Eighth Amendment claim. Importantly, "prison officials may use appropriate force to regain control of an aggressive prisoner," and the video clearly shows Plaintiff physically resisting efforts to restrain him. *Cordell*, 759 F.3d at 581; (Doc. 70-3, Video at 7:10:39–7:10:47). Defendants reasonably could have believed that his resistance posed a threat to them and those present in the dayroom, including other prisoners. *Combs*, 315 F.3d at 556 (noting that prison officials may use force to maintain "prison security"). Given that, their decision to take him to the ground must be afforded "wide-ranging deference." *Iacovone*, 2007 WL 490160, at *8. And the video shows that the amount of force used was limited to that

7

plausibly necessary to take him to the ground and subdue him, after other efforts to restrain him were unsuccessful. *See Johnson v. Sootsman*, 79 F.4th 608, 620 (6th Cir. 2023) (finding a prison official's use-of-force reasonable where, to handcuff a resisting prisoner, the officer pushed him against the wall, squeezed his neck for two seconds, and brought him to the ground); *Griffin*, 604 F.3d at 954–55 (finding the force used to take a prisoner to the ground proportionate under the Eighth Amendment standard where the prisoner was noncompliant and tried to pull away from the defendant). Therefore, on this record, no reasonable juror could conclude that Defendant Straight and the other officers tackled Plaintiff "maliciously" or "sadistically" in violation of the Eighth Amendment. *Hudson*, 503 U.S. at 7. As such, Defendants are entitled to summary judgment.

### C. Dragging

Because he lost consciousness after he hit the floor, Plaintiff argues that Defendants also used excessive force by "dragg[ing]" him by his handcuffs to the infirmary. (Doc. 83 at 2). Defendants contend that Plaintiff resisted standing or walking by going "dead weight." (Doc. 70-1 at 8–9). In the video, Plaintiff's face and body cannot be seen while he is on the ground. (Doc. 70-3, Video at 7:10:51–7:11:03 (showing only Plaintiff's shoes once he is tackled)). So, in the absence of clear footage demonstrating otherwise, the Court must take Plaintiff's allegation that he lost consciousness as true. *Ashford v. Raby*, 951 F.3d 798, 800 (6th Cir. 2020) (adopting "the plaintiff's version of any facts not caught on film").

Even crediting Plaintiff's version of events, his allegations again fail to demonstrate that Defendants acted with the required culpable state-of-mind. The video plainly shows that Defendants' actions were far from rough. (Doc. 70-3, Video at 7:12:11–7:12:22). In the footage, Defendants can be seen struggling to lift Plaintiff to his feet. (*Id.* at 7:12:05–7:12:13). When it becomes apparent that Plaintiff cannot support his own weight or walk, some officers hold him by

his shirt, while others try to lift him by his arms. (*Id.* at 7:12:13–7:12:15). After the officers almost drop him, (*see id.* at 7:12:14–7:12:18), they all shift to carry him by his arms (*id.* at 7:12:17–7:12:23). Upon review, these methods appear reasonable and necessary to transport Plaintiff quickly to the infirmary, which Plaintiff admits was "only 25 yards away." (Doc. 83 at 2). Plus, nothing in the video supports Plaintiff's argument that Defendants took this approach or intentionally positioned his arms to cause him pain. (*See* Doc. 70-3, Video at 7:12:11–7:12:23; Doc. 83 at 2 (claiming their dragging was "clearly use of force")). As a result, this claim also fails.

\*\*\*

Lastly, the Court recognizes that Plaintiff seemingly suffered painful physical injuries because of this incident. Medical records cited by the parties suggest he incurred superficial cuts and bruises and experienced lasting pain to his shoulder and ribs. (Doc. 70-1 at 3–5 (noting Plaintiff still had swelling in his right hand, chest pain, "black eyes," a cut above his eye, "left side pain," and shoulder pain four days after the incident), 12 (reporting shoulder pain seventeen days later); Doc. 83 at 2–4 (discussing medical records not attached to Plaintiff's motion that allegedly say Plaintiff continued to experience shoulder pain at least a year after the incident); *see id.* at 4 (claiming he has a scar on his face)). But the seriousness of Plaintiff's injuries does not decide the day. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (reiterating courts should consider the extent of a prisoner's injury as one factor in the Eighth Amendment analysis). In the end, Plaintiff was required to put forth some evidence creating a genuine issue of material fact as to whether Defendants inflicted pain unnecessarily and wantonly, rather than in "a good-faith effort to maintain or restore discipline." *Hudson*, 503. U.S. at 7; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) (noting that when a defendant properly moves for summary judgment, the non-moving party "must demonstrate a genuine issue of material fact" that a constitutional

9

violation occurred). Because he did not do so, Defendants are entitled to summary judgment. The Undersigned therefore does not need to address Defendants' remaining qualified immunity arguments. (Doc. 70 at 8–9; Doc. 84 at 4).

## IV. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS GRANTING** Defendants' Motion for Summary Judgment. (Doc. 70).


Date: December 18, 2024                   /s/ Kimberly A. Jolson
                                          KIMBERLY A. JOLSON
                                          UNITED STATES MAGISTRATE JUDGE


### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).